UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

DANTRELL JAYVONE SIMS,

        Plaintiff,                  Case No. 2:24-cv-42

v.                                         Honorable Maarten Vermaat

UNKNOWN SCHIMMELPENNY et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has sought leave to proceed *in forma pauperis*. (ECF No. 2.) The Court will grant Plaintiff's motion because it reasonably appears that paying the cost of the filing fee in one lump sum would impose an undue financial hardship. *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988).

Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.) This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a

defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss the following claims for failure to state a claim: (1) Plaintiff's official capacity claims; (2) any personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's Fifth Amendment double jeopardy claims; and (4) any Eighth and Fourteenth Amendment claims premised upon Plaintiff's placement in segregation. The following personal capacity claims remain: (1) Plaintiff's Eighth Amendment excessive force claim against Defendant Schimmelpenny; and (2) Plaintiff's Eighth Amendment failure to intervene claims against Defendants Balbierz and Unknown Parties #1, #2, and #3.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellany Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Correctional Officers Unknown Schimmelpenny, Unknown Balbierz, and Unknown Parties #1, #2, and #3 in their official and personal capacities.

Plaintiff alleges that on some unknown date, he complained to the housing unit officers about an item missing from his meal tray. (Compl., ECF No. 1, PageID.4.) Plaintiff's requests were denied, so he asked to speak to a sergeant. (*Id.*) A few minutes later, an officer came to Plaintiff's cell and spoke to him. (*Id.*) That officer left, and several officers came to Plaintiff's cell a few minutes later. (*Id.*)

Plaintiff avers that Defendant Schimmelpenny ordered Plaintiff to "turn around and cuff up." (*Id.*) Plaintiff immediately complied, and the door to his cell was opened. (*Id.*)

According to Plaintiff, Defendant Schimmelpenny was angry because "he'd been made to believe [that Plaintiff] had been making threats to other corrections officers." (*Id.*) Defendant Schimmelpenny "sadistically and maliciously twisted the [P]laintiff's left arm[,] causing [him] excruciating pain[,] before placing it into restraints extremely tight[ly]." (*Id.*)

Plaintiff told Defendant Schimmelpenny, "Be careful with my right hand because it was recently broken." (*Id.*) In response, Defendant Schimmelpenny grabbed Plaintiff's right hand "and violently twisted it 180° before placing it in the handcuffs backwards." (*Id.*) Plaintiff cried out in pain and told all the officers present that he was "in excruciating pain." (*Id.*) Plaintiff contends, however, that Defendants escorted him to the Steamboat Unit "without addressing his pleas." (*Id.*)

4

Plaintiff was subsequently referred to healthcare "to be seen about the damage done to his recently broken right hand." (*Id.*) Plaintiff was given medication for the pain and was scheduled for X-rays because the medical technician noted swelling on Plaintiff's hand. (*Id.*) Plaintiff contends that he had not experienced pain prior to Defendant Schimmelpenny's use of force. (*Id.*) Plaintiff alleges that he continues to experience "stinging pain in the right hand," which has forced him to stop "work as a poet and novelist." (*Id.*) Plaintiff also contends that he was held in segregation for five months following this incident. (*Id.*)

Based upon the foregoing, the Court construes Plaintiff's complaint to assert an Eighth Amendment excessive force claim against Defendant Schimmelpenny, and Eighth Amendment failure to intervene claims against Defendants Balbierz and Unknown Parties #1, #2, and #3.[2] Plaintiff also references violations of the Fifth Amendment's Double Jeopardy Clause, arguing that because he was injured and punished by state government agents, he was "subjected to punishment for the crime he had been sentenced for twice." (*Id.*) Finally, the Court construes

---

[2] Plaintiff has attached the Step I grievance response to his complaint. (ECF No. 1-4, PageID.11.) That response suggests that Defendant Balbierz was part of the team of officers who conducted the escort. (*Id.*) The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the district court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage" (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint.

Plaintiff's complaint to assert Eighth and Fourteenth Amendment claims premised upon his placement in segregation.

As relief, Plaintiff seeks $650,000,000.00 in damages. (*Id.*, PageID.5.) He also seeks a personal apology from Defendant Schimmelpenny. (*Id.*, PageID.4.) Finally, Plaintiff argues that his sentence of 1 to 10 years for great bodily harm should be vacated, and that he should receive $10,00.00 a day for every day he has spent in MDOC custody. (*Id.*, PageID.5.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

6

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. Although an action against a defendant in his or her individual capacity intends to impose liability on the specified individual, an action against the same defendant in his or her official capacity intends to impose liability only on the entity that they represent. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a Section 1983

7

suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks damages, as well as an apology from Defendant Schimmelpenny and for Plaintiff's sentence to be vacated and for him to be released from MDOC custody. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

An official capacity action seeking declaratory and injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

To the extent Plaintiff seeks injunctive or declaratory relief in the form of an apology, the Court notes that Plaintiff is no longer incarcerated at URF. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where a plaintiff can show a reasonable expectation or demonstrated

8

probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

Plaintiff is no longer confined at URF and fails to allege facts that show he would be subjected to further future conduct by Defendants. Thus, Plaintiff's request for an apology does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Plaintiff also asks that his sentence be vacated and that he be released from MDOC custody. Such relief, however, is available only upon habeas corpus review. A request for release from prison constitutes a challenge to the fact or duration of confinement, which should be brought as a petition for habeas corpus; it is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (discussing that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, because Plaintiff's request for equitable relief challenges the fact of his incarceration, he cannot seek such relief in his § 1983 action. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (concluding that dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23–24 (7th Cir. 1997) (discussing that the reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, and (5) potential

application of second or successive petition doctrine or three-strikes rules of § 1915(g)). The Court, therefore, will dismiss Plaintiff's claim for injunctive relief in the form of having his sentence vacated and being released from MDOC custody against Defendants.

Accordingly, for the foregoing reasons, the Court will dismiss Plaintiff's official capacity claims against Defendants in their entirety.[3]

### B. Personal Capacity Claims

#### 1. Eighth Amendment Claims

##### a. Excessive Force/Failure to Intervene

Plaintiff contends that Defendant Schimmelpenny violated his Eighth Amendment rights by twisting Plaintiff's right hand and restraining Plaintiff in handcuffs that were too tightly applied. Plaintiff also suggests that Defendants Balbierz and Unknown Parties #1, #2, and #3 failed to intervene to stop the use of force.

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous", nor may it contravene society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Id.* at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992)

---

[3] To the extent Plaintiff seeks the same declaratory or injunctive relief against Defendants in their personal capacities, such claims will be dismissed for the same reasons set forth above.

(holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). Furthermore, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal

11

quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

As noted above, Plaintiff alleges that even though he told Defendant Schimmelpenny that his right hand had recently been broken, Defendant Schimmelpenny disregarded Plaintiff's statement, "violently twisted" Plaintiff's right hand, and placed it in "extremely tight" restraints." (Compl., ECF No. 1, PageID.4.) Plaintiff avers that he cried out in pain and informed all of the officers present that he was in "excruciating pain." (*Id.*) He alleges that despite his "cries of anguish," Defendants transported him to the Steamboat Unit without "addressing his pleas." (*Id.*) At this early stage of proceedings, taking Plaintiff's allegations as true, the Court concludes that Plaintiff has sufficiently set forth an Eighth Amendment excessive force claim against Defendant Schimmelpenny, as well as Eighth Amendment failure to intervene claims against Defendants Balbierz and Unknown Parties #1, #2, and #3.

### b. Placement in Segregation

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon his placement in segregation for five months following the alleged use of force.

The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S.

12

at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Placement in segregation is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Although Plaintiff may have been denied certain privileges as a result of placement in segregation, he fails to allege that his placement in segregation resulted in the denial of basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of placement in segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). The Court, therefore, will dismiss any purported Eighth Amendment claims premised upon Plaintiff's placement in segregation.

### 2. Fifth Amendment Double Jeopardy Claims

Plaintiff also contends that the use of force violated his rights under the Fifth Amendment's Double Jeopardy Clause. Plaintiff contends that Defendants are state government agents who punished him, and that he was "subjected to punishment for the crime he had been sentenced for twice." (Compl., ECF No. 1, PageID.4.)

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. Although the language "jeopardy of life or limb" suggests the protection only applies to the most serious infractions, "the Clause has long been construed to mean something far broader than its

13

literal language." *Breed v. Jones*, 421 U.S. 519, 527–28 (1975) (citing *Ex Parte Lange*, 85 U.S. (18 Wall.) 163, 170–73 (1874)). The Clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Dep't of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767, 769 n.1 (1994) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The protection against multiple punishments for the same criminal act "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).

The Double Jeopardy Clause, however, does not apply to all punishments. "[J]eopardy describes the risk that is traditionally associated with a criminal prosecution." *Breed*, 421 U.S. at 528 (citing *Price v. Georgia*, 398 U.S. 323, 326, 329 (1970)). For that reason, the Supreme Court has determined that the Double Jeopardy Clause "protects only against the imposition of multiple *criminal punishments* for the same offense and then only when such occurs in successive proceedings." *United States v. Beaty*, 147 F.3d 522, 524 (1998) (quoting *Hudson v. United States*, 522 U.S. 93, 99 (1997)). In other words, the risk that jeopardy describes "is not present in proceedings that are not 'essentially criminal.'" *Breed*, 421 U.S. at 528 (quoting *Helvering v. Mitchell*, 303 U.S. 391, 398 (1938)). "The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see also Wolff v. McDonnell*, 418 U.S. 539, 555–56 (1974) (concluding that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply"). Here, Defendants' alleged use of excessive force did not amount to a criminal prosecution and, therefore, Plaintiff was not subjected to multiple criminal punishments for the same offense. Accordingly, his Fifth Amendment double jeopardy claims will be dismissed.

### 3. Fourteenth Amendment Due Process Claims

The Court has also construed Plaintiff's complaint to assert Fourteenth Amendment due process claims premised upon Plaintiff's placement in segregation.

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

With respect to a prisoner's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Here, Plaintiff alleges that he spent only five months in segregation. (Compl., ECF No. 1, PageID.4.) That amount of time does not rise to the level of an atypical and significant hardship. Accordingly, any Fourteenth Amendment due process claims against Defendants premised upon Plaintiff's placement in segregation will be dismissed.

### Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Moreover, having conducted the review required by the PLRA, the Court determines that the following claims will

be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c): (1) Plaintiff's official capacity claims; (2) any personal capacity claims seeking declaratory and injunctive relief; (3) Plaintiff's Fifth Amendment double jeopardy claims; and (4) any Eighth and Fourteenth Amendment claims premised upon Plaintiff's placement in segregation. The following personal capacity claims remain: (1) Plaintiff's Eighth Amendment excessive force claim against Defendant Schimmelpenny; and (2) Plaintiff's Eighth Amendment failure to intervene claims against Defendants Balbierz and Unknown Parties #1, #2, and #3.

An order consistent with this opinion will be entered.


Dated: April 10, 2024　　　　　　　　　　　　/s/ *Maarten Vermaat*
　　　　　　　　　　　　　　　　　　　　　　　Maarten Vermaat
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge